**SPEAR, LEEDS, & KELLOGG, Plaintiff,**

v.

**Richard ROSADO, Defendant.**

**No. 99 Civ. 11417 JSR.**

United States District Court, S.D. New York.

March 24, 2000.

Robert Penchina, Steven T. Shelton, Rogers & Wells, L.L.P., New York, NY, for plaintiff.

## MEMORANDUM ORDER

RAKOFF, District Judge.

On November 17, 1999, plaintiff Spear, Leeds & Kellogg ("SLK") brought suit against defendant Richard Rosado on the grounds of trademark infringement, trademark dilution, and unfair competition. Specifically, SLK alleged that Rosado had registered and was using as an Internet domain name SLK's well-known REDI-BOOK trademark, as well as operating a web site under the infringing name REDI-BOOK.COM that purported to offer the same financial services offered under SLK's REDIBOOK mark. On November 24, 1999, the Court entered a preliminary injunction prohibiting Rosado, his agents, employees, and any other persons acting in concert with him "from using in any way the designation REDIBOOK.COM and any designation that includes the mark REDI, or any confusingly similar designation." *See* Order dated Nov. 24, 1999.

Thereafter, following briefing and discovery, the Court conducted on February 25, 2000 an evidentiary hearing on SLK's request for a permanent injunction and other relief. On the basis of the evidence there presented, as well as all prior papers and proceedings herein, the Court, for the reasons set forth below, now makes permanent the relief embodied in its November 24 Order. Additionally, the Court, pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), P.L. No. 106–113, § 3002 (1999) (to be codified at 15 U.S.C. § 1125(d)), orders that Rosado transfer to SLK all of his domain names that include either "REDI" or "REDI-BOOK."[1]

The facts, as found by the Court, are as follows. SLK, a prominent securities brokerage firm, owns the federally registered mark "REDI" for use in connection with certain electronic securities services. Since 1997, SLK has operated an electronic communications network, or "ECN," under the REDIBOOK mark. In addition to its REDIBOOK mark, SLK offers a variety of financial services under the REDI family of marks. On July 21, 1999, SLK announced that it had formed a relationship with three other prominent securities brokerage firms whereby SLK's REDI-BOOK brand ECN would be made available to the customers of those other firms.

On or about September 16, 1999, Rosado applied for and obtained a registration for the Internet domain name "redibook.com," as well as registrations for various other

---

**1.** Congress enacted the ACPA on December 3, 1999. On December 28, 1999, SLK amended its complaint to add a claim for relief under the ACPA.

domain names containing the term "redi," such as "redi-ecn.com," "redibook.net," and "redibook.org." Subsequently, Rosado began operating a web site entitled "Redi-Book.com" at the redibook.com Internet address, in connection with which he touted that the site was the information source for the "latest Wall Street phenomenon" and would eventually "include discount online trading, promotions, such as free online trades and other customer benefits." Additionally, Rosado's RediBook.com web site displayed the logos of, and hyperlinks to, a number of SLK's competitors.

SLK claims that it is entitled to relief for trademark infringement and for false designation of origin under section 43(a) of the Lanham Act. *See* 15 U.S.C. §§ 1114(1), 1125(a). To prevail, SLK must show that " 'it has a valid mark entitled to protection and that defendant's use of it is likely to cause confusion.' " *Morningside Group Ltd. v. Morningside Capital Group, L.L.C.,* 182 F.3d 133, 137 (2d Cir.1999) (quoting *Cadbury Beverages, Inc. v. Cott Corp.,* 73 F.3d 474, 477 (2d Cir.1996)). As to SLK's REDI mark, because it has been registered with the U.S. Patent and Trademark Office it is presumed valid and protectible. *See Sports Authority, Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 960 (2d Cir.1996).

■ As to the REDIBOOK mark, although SLK does not yet own a federal registration for this mark it may nonetheless assert a claim for trademark infringement and false designation of origin under section 43(a) of the Lanham Act. *See 815 Tonawanda St. Corp. v. Fay's Drug Co., Inc.,* 842 F.2d 643, 646–47 (2d Cir.1988). The standard for determining whether REDIBOOK is a valid mark and entitled to protection is generally the same standard as that governing whether a mark is entitled to federal registration. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 767–68, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Under that standard, trademarks are divided into five general categories of distinctiveness: 1) generic; 2) descriptive; 3) suggestive; 4) arbitrary; and 5) fanciful. *See, e.g., Genesee Brewing Co., Inc. v. Stroh Brewing Co.,* 124 F.3d 137, 142 (2d Cir.1997); *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976) (Friendly, J.). Here, the Court finds that because, *inter alia,* the term "REDIBOOK" is not the generic name of any of SLK's services and does not describe any of its services, the mark REDIBOOK—under which SLK has extensively promoted its ECN services—is inherently distinctive and therefore valid and protectable. *See Abercrombie,* 537 F.2d at 9–10.

■ SLK must also show that ordinary consumers are likely to be misled or confused as to the source of the services offered under its REDI and REDIBOOK marks. *See, e.g., Morningside Group,* 182 F.3d at 138. To measure the likelihood of confusion, the Court weighs the so-called *"Polaroid"* factors: "(1) the strength of the plaintiff's mark; (2) the similarity of plaintiff's and defendant's marks; (3) the competitive proximity of their products; (4) the likelihood that plaintiff will 'bridge the gap' and offer a product like defendant's; (5) actual confusion between products; (6) defendant's good faith; (7) the quality of defendant's product as compared to plaintiff's; and (8) the sophistication of the purchasers." *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961); *see also, e.g., Streetwise Maps, Inc. v. Vandam, Inc.,* 159 F.3d 739, 743 (2d Cir.1998). Upon review, the Court concludes that Rosado's appropriation of SLK's REDI and REDIBOOK marks is more than likely to confuse consumers. Specifically, the Court finds that REDIBOOK is a strong mark, that Rosado's site seeks to impersonate SLK's mark by using the identical REDIBOOK mark, that Rosado's web site purports to offer services identical to those provided by SLK under its REDIBOOK and REDI marks, that Rosado, who holds by his own estimation between 60 and 70 domain

name registrations, was not acting in good faith in using SLK's REDI and REDIBOOK marks, that Rosado's web site has been designed to potentially fool even sophisticated consumers, and, finally, that there is a vast gap between the prominent, highly reputable services provided by SLK and those provided by Rosado, who is neither a licensed securities broker dealer nor provides any real services on his site.

Accordingly, the Court finds that SLK has sustained its claims of trademark infringement and of false designation of origin under section 43(a) of the Lanham Act.

SLK also seeks relief under the ACPA, which was intended " 'to protect consumers and American businesses, to promote the growth of online commerce, and to provide clarity in the law for trademark owners by prohibiting the bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks—a practice commonly referred to as cybersquating.' " *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.,* 202 F.3d 489, 495 (2d Cir.2000) (quoting the legislative history of the ACPA). Under the ACPA, a trademark owner is entitled to relief, including an order requiring a domain name registrant to transfer, forfeit, or cancel its domain names, if the trademark owner shows that (1) it owns a distinctive or famous mark, (2) that the domain name registrant registers, uses, or traffics in a domain name that is identical to confusingly similar to the trademark owner's mark, and (3) the domain name registrant had a "bad faith intent to profit" from the trademark owner's mark. *See* 15 U.S.C. § 1125(d)(1)(A); *see also Sporty's Farm,* 202 F.3d at 495–96.[2]

Applying these tests, the Court finds that the marks REDI and REDIBOOK, both of which are based on the fanciful acronym REDI that stands for "Routing and Execution and Delivery Interface," are distinctive and thus entitled to the ACPA's protection. Indeed, SLK has used and promoted the mark REDI and the mark REDIBOOK in connection with online stock trading services since July 1992 and October 1997, respectively. *See* Hewitt Aff. ¶¶ 3–4.[3] The Court further concludes that Rosado's use not only of the domain names redibook.com, redibook.net, and redibook.org but also of domain names that combine SLK's distinctive mark REDI with generic or descriptive financial industry terms, such as redi-ecn.com and redixt.com, is confusingly similar to SLK's mark REDI. *See Girls Clubs of America, Inc. v. Boys Clubs of America, Inc.,* 683 F.Supp. 50, 54 (S.D.N.Y.), *aff'd,* 859 F.2d 148 (2d Cir.1988). Finally, the Court finds that Rosado has acted with a "bad faith intent" to profit, *see* 15 U.S.C. § 1125(d)(1)(B)(i), because, *inter alia,* Rosado has no intellectual property rights in either the REDI or REDIBOOK marks, has failed to make a bona fide use of either mark before SLK's use of those marks, has made a commercial use of the Redibook.com domain name, and has registered numerous domain names that include marks that belong to third parties.

Ultimately, Rosado does not so much challenge the validity of SLK's REDI or REDIBOOK marks as allege that SLK's conduct with respect to its on line trading system constituted "unclean hands." *See* Tr. of Feb. 25, 2000 at 36–38. For example, Rosado contends that SLK never received the requisite approval from the Securities and Exchange Commission ("SEC") to operate its REDI trading system. However, SLK has requested and received numerous favorable no-action letters from the SEC with regard to its operation of the REDI trading system, and is

---

**2.** The ACPA is applicable to infringing domain names where, as here, those names were obtained before the ACPA's enactment. *See id.* at 502.

**3.** The REDIBOOK trading service has proven extremely successful; it is currently ranked third among electronic communications networks in terms of volume of trades executed. *See* Transcript of Feb. 25, 2000 ("Tr."), at 9.

not, therefore, in violation of federal securities laws and regulations. *See* Shelton Aff. Rosado also contends that promotional materials for the new REDIBook brand ECN, which SLK formed together with three other prominent securities firms in July 1999, contain false and misleading information. While SLK could perhaps have been more punctilious in distinguishing in its promotional materials the REDI-Book ECN it currently operates from the proposed new joint venture REDIBook ECN, the Court finds these minor mistakes immaterial both to the issues at hand and in general. *See* Tr. of Feb. 25, 2000 at 49–51. In short, Rosado has failed to show that SLK has run afoul of any law or regulation, or provided any other reason as to why SLK should otherwise be barred from obtaining equitable relief from the Court in this action.

Accordingly, the Court hereby grants SLK's motion and permanently enjoins defendant Richard Rosado, his agents, employees, and any other persons acting in concert with him from using in any way the designation REDIBOOK.COM and any designation that includes the mark REDI, or any confusingly similar designation. The Court also hereby grants SLK's request for relief under the ACPA and orders Rosado to transfer to SLK by no later than April 15, 2000 all of his domain names that include either the phrase "REDI" or "REDIBOOK." Since no other issues remain to be decided in this case, the Clerk is directed to enter final judgment.

SO ORDERED.