*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 04a0368p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

DAIMLERCHRYSLER,

*Plaintiff-Appellee,*

*v.*

No. 03-1950

THE NET INC., et al.,

*Defendants,*

KEITH MAYDAK; MICHAEL SUSSMAN,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-74186—Paul D. Borman, District Judge.

Submitted: September 17, 2004

Decided and Filed: October 28, 2004

Before: KENNEDY and COOK, Circuit Judges; HOOD, District Judge.[*]

---

**COUNSEL**

**ON BRIEF:** Keith Maydak, N. Versailles, Pennsylvania, Michael Sussman, N. Versailles, Pennsylvania, pro se. George T. Schooff, Joshua B. Dobrowitsky, HARNESS, DICKEY & PIERCE, Troy, Michigan, for Appellee.

---

**OPINION**

---

KENNEDY, Circuit Judge. Plaintiff DaimlerChrysler moved for summary judgment on its Anti-Cybersquatting Consumer Protection Act (ACPA) claim, arguing that there was no genuine issue of material fact with respect to whether the defendants violated the ACPA by their registration of the domain name "foradodge.com." The district court agreed and granted summary judgment to the plaintiff. The district court also permanently enjoined the defendants from any further use of the "foradodge" name, ordered that the "foradodge.com" domain name be transferred to the plaintiff, and struck the defendants' third party claims against the United States in which they alleged that the ACPA provided for an unlawful taking in

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

violation of the Fifth Amendment to the United States Constitution. The defendants appeal from all of the above holdings and orders of the district court. For the following reasons, we AFFIRM.

## BACKGROUND

DaimlerChrysler manufactures, sells, and services automotive vehicles, service parts, repair parts, and accessories for past and current automotive vehicles. DaimlerChrysler also licenses others to make and sell models, replicas, and other items associated with its automobiles. Since 1924, DaimlerChrysler has employed the DODGE mark to identify one or more of its products or services. In addition, the DODGE mark has been registered as a trademark since 1939. As early as 1994, DaimlerChrysler advertised and used as a toll free telephone number "1-800-4-A-DODGE." In September 1995, DaimlerChrysler registered the domain name 4ADODGE.com with Network Solutions, Inc. and established a website using the 4ADODGE domain name.

In late 1996, defendant Maydak, who was incarcerated in federal prison at the time, asked defendant Michael Sussman to register the domain name "foradodge.com" for him. On December 25, 1996, Sussman registered the domain name with Network Solutions Inc. Rather than using his or Maydak's name as the registrant, Sussman listed the registrant as The Net Inc. By the defendants' own admission, however, there is no such corporate entity; rather, The Net Inc. is an "unincorporated association" between defendants Maydak and Sussman. In addition to registering "foradodge.com," Maydak also registered the domain name "foradodge.net." Maydak claims that he planned to use the "foradodge.com" domain name to establish a website that described his "dodging" services such as asset protection, tax and creditor avoidance, and ways to bypass "society's general paradigm."

The defendants have not limited their registration of domain names to merely those that potentially interfere with the DODGE mark. Rather, they have registered dozen of other domain names that are quite similar to various other trademarks, including "altavistadigital.com," "cnn.org," "espnet.com," "msnbc.org," "nasdaq.net," "themicrosoftnetwork.com," and "ups.net," among others. Moreover, the defendants have registered domain names that are substantially similar to various United States governmental institutions, agencies, and departments, including "doj.com," "fda.com," "nasa.net," "nasa.org," and "www.whitehouse.com," among others.

From at least February 1998, and possibly as early as December 1996, to about October 1998, the defendants pointed the "foradodge.com" domain name to a website that contained a link to a pornographic website.

## ANALYSIS

**I.**     We first consider whether the district court erred in granting summary judgment to the plaintiff on its ACPA claim.

We review a grant of summary judgment *de novo*. *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). Summary judgment may be granted "if pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(C). To create a genuine issue of a material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has noted, "[t]here is no issue for trial unless there is sufficient evidence favoring the non moving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

In 1999, Congress passed the ACPA as an amendment to the Trademark Act of 1946 ("Lanham Act") to prohibit "cybersquatting." As the district court noted, "cybersquatting" occurs when a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit

from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder. *See Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489 493 (2d Cir. 2000). A trademark owner asserting a claim under the ACPA must establish the following: (1) it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit. *Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 546 (6th Cir. 2003).

Because the defendants appeal from the district court's grant of summary judgment only on the grounds that the district court erred when it found that 1) the mark 4ADODGE qualifies as a protected trademark under the ACPA, and 2) the defendants had a bad faith intent to profit when it registered the "foradodge.com" domain name, we need only consider these two arguments, which implicate the first and fifth elements necessary to establish an ACPA claim.[1]

The district court first considered whether plaintiff's DODGE and 4ADODGE marks were entitled to trademark protection. Under the Lanham Act, a trademark is defined as "any word, name, symbol, or device, or any combination thereof . . . used by a person . . . to identify and distinguish his or her goods, including a unique product from those manufactured or sold by others and to indicate the source of goods, even if that source is unknown." 15 U.S.C. § 1127. A trademark need not be registered to be entitled to protection under the ACPA. *See Wal-Mart Stores, Inc. v. Samara Bros.,* 529 U.S. 205, 209 (2000); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Rather, "the general principles qualifying a mark for registration under [the act] are for the most part applicable in determining whether an unregistered mark is entitled to protection." *Two Pesos*, 505 U.S. at 768. The provision governing registration under the act "requires that registration be granted to any trademark 'by which the goods of the applicant may be distinguished from the goods of others' - subject to various limited exceptions." *Wal-Mart Stores*, 529 U.S. at 211 (quoting 15 U.S.C. § 1052).

The district court noted that there is no dispute that plaintiff's DODGE mark is entitled to protection. The DODGE mark has been registered since 1939 and has been in continuous use since 1924. The district court also noted that the plaintiff's registration of the mark entitled it to a presumption that the mark is valid, and that the continuous use of the mark for over five years after registration renders the mark incontestable. *See id.* at 209. The district court then considered whether the plaintiff's 4ADODGE mark, although not registered, is entitled to trademark protection under the ACPA. The district court noted the following:

> This mark, which incorporates plaintiff's incontestable DODGE mark, has been used by the plaintiff to distinguish its automobiles for a number of years. As early as 1994, plaintiff advertised and used as a toll free telephone number 1-800-4-A-DODGE. Plaintiff has also used the 4ADODGE.COM website since 1995.

The defendants allege that 4ADODGE is not entitled to protection as a trademark because the plaintiff merely uses the mark in a telephone number and as a website. Unlike companies such as 1-800-Flowers, the defendants contend, the plaintiff does not use its telephone number or website address as a business name or slogan, and thus it should not receive protection as a trademark.

Even if there were a genuine issue of material fact as to whether the plaintiff has a valid trademark in 4ADODGE, the district court also concluded that the defendants' "foradodge.com" domain name was confusingly similar to the plaintiff's distinctive and famous DODGE mark. The district court noted that the "foradodge" domain name simply incorporates plaintiff's protected mark into a

---

[1] The defendants assert for the first time in this appeal the defense that they "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii). Because the defendants never raised this defense to the district court, we consider it waived. *Brindley v. McCullen,* 61 F.3d 507, 509 (6th Cir. 1995).

prepositional phrase. "Courts generally have held that a domain name that incorporates a trademark is 'confusingly similar to' that mark if 'consumers might think that [the domain name] is used, approved, or permitted' by the mark holder." *Ford Motor Co. v. Greatdomains.com, Inc.*, 177 F. Supp. 2d 635, 641 (E.D. Mich. 2001) (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 157 F. Supp. 2d 658, 677 (E.D. Va. 2001)). Moreover, courts have consistently "found that slight differences between domain names and registered marks, such as the addition of minor or generic words to the disputed domain names are irrelevant." *Ford Motor*, 177 F. Supp. 2d at 641 (internal quotations omitted) (holding that marks incorporated into the domain names "4fordparts.com," "jaguarcenter.com," and "volvoguy.com" were confusingly similar to the marks FORD, JAGUAR, and VOLVO); *See also Spear, Leeds, & Kellogg v. Rosado*, 122 F. Supp. 2d 403, 406 (S.D.N.Y. 2000) (finding that domain names that combined the "Redi" mark with generic or descriptive terms were confusingly similar to the plaintiff's trademark). Thus, the district court concluded, defendants' "foradodge.com" domain name is confusingly similar to plaintiff's protected DODGE mark. The defendants did not appeal this conclusion, which independently supports the district court's finding with respect to the first four elements of the plaintiff's ACPA claim.[2]

Next, we consider the fifth element of the ACPA claim, whether the defendants registered the "foradodge.com" domain name with a "bad intent to profit." The ACPA provides a list of nine non-exclusive factors that a court may consider in determining whether a bad faith intent to profit is established. 15 U.S.C. § 1125(d)(1)(B)(i). They are as follows:

(I)     the trademark or other intellectual property rights of the person, if any, in the domain name;

(II)    the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III)   the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV)    the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V)     the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI)    the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII)   the person's provision of material and misleading false contact information when applying for registration of the domain name, the person's intentional failure to maintain

---

[2] The defendants also appeal from the district court's denial of their motion to compel further discovery. The defendants contend that they are entitled to further discovery because the 4ADODGE.com website now merely transfers users to the DODGE.com website. This evidences, the defendants argue, that the plaintiff has abandoned the 4ADODGE.com mark. The fact that the plaintiff routes internet traffic directly to its DODGE.com site is hardly evidence of abandonment. Nonetheless, even if it were, the denial of the motion to compel discovery was appropriate because the district court has also concluded that the plaintiff is entitled to summary judgment on the ground that "foradodge.com" site is confusingly similar to the DODGE mark, which assuredly has not been abandoned.

accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII)    the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX)      the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of [the act].

Considering the factors in their entirety, the district court concluded that it is clear that the defendants registered the "foradodge.com" domain name with a bad intent to profit. We agree.

All but one of the enumerated factors above support a finding of bad faith. Factor six, which asks whether the person offered to sell the domain name to the mark owner for financial gain, is neutral, as the plaintiff presented evidence that defendant Sussman offered to sell the domain name to it for $30,000 while Sussman avers that it was plaintiff's agent who initially sought to buy the domain name. Although there is a genuine issue of fact on this point, that does not defeat plaintiff's summary judgment since, when considering the factors in their entirety, no reasonable trier of fact could conclude that the defendants did not act in bad faith with intent to profit. After considering the remaining factors, this conclusion is inescapable. For instance, 1) the defendants had no intellectual property rights in the "foradodge" name at the time of registration; 2) the domain name does not contain any variation of the names of the defendants; 3) the defendants have never *actually* used the site in connection with the bona fide offer of goods or services;[3] 4) the defendants never claim that they used the site for any noncommercial or other "fair use;" 5) it can be inferred that the defendants intended to divert customers from the plaintiff's website from the fact that the defendants' "foradodge" domain name is phonetically identical to plaintiff's 4ADODGE mark; 6) the defendants provided misleading contact information as the site's registrant, initially listing the registrant as The Net Inc., of Hewlett, New York, while no such entity exists; 7) the defendants registered multiple sites, such as doj.com, espnet.com, ups.net, which are confusingly similar to names and marks of others; and finally 8) DODGE is a highly distinctive and famous mark.

Accordingly, since we conclude that no rational trier of fact could find that the defendants did not violate the ACPA, we affirm the district court's grant of summary judgment to the plaintiff.[4]

**II.**      We next consider the defendants' argument that the scope of the injunction granted by the district court was overly broad. The injunction prohibits the defendants from, *inter alia*, "using or displaying DODGE, 4ADODGE, ... or colorable imitations thereof including but not limited to FORADODGE, as a business name, domain name or mark in any ... advertisement, ... or in any other communication."

The grant of a permanent injunction is reviewed for abuse of discretion, giving "great deference to the decision of the district court." *PACCAR Inc., v. Telescan Techs, L.L.C.*, 319 F.3d 243, 249 (6th

---

[3] It is irrelevant that defendant Maydak states that he intends to add *bona fide* goods or services to the site eventually since the factor asks whether the domain name holder has actually used the site in connection with the offer of goods or services, not whether the domain holder intends to do so.

[4] The defendants also appeal the district court's decision to transfer the "foradodge.com" domain name to the plaintiffs because, they contend, the plaintiff will not suffer any harm if they retain the domain name while providing a disclaimer that their site is not associated with the plaintiff. However, the defendants' have no right to use the domain name "foradodge.com" since the use violates the ACPA. Moreover, the ACPA explicitly authorizes courts to transfer a domain name after finding an ACPA violation. *See* 15 U.S.C. § 1125(d)(1)(C).

Cir. 2003).  Only in the rarest of circumstances will the district court's balancing of the equities be disturbed.  *See Moltan v. Eagle-Picher Indus.*, 55 F.3d 1171, 1175 (6th Cir. 1995).

The defendants contend that the scope of the injunction is overly broad because it not only prohibits them from using the domain name "foradodge.com," but also prohibits them from any use of the term "foradodge."  The defendants also argue that the injunction is overly broad because, they contend, the plaintiff failed to show that it suffered any harm after they registered the "foradodge.com" domain name in 1996.  However, as the district court correctly noted, "irreparable harm is presumed form defendants infringement of plaintiff's mark, and thus this argument does not provide a basis for narrowing the scope of injunctive relief."  *See Circuit City Stores Inc. v. Carmax, Inc.,* 165 F.3d 1047, 1065 (6th Cir. 1999) (explaining that a court need only find that a defendant is liable for infringement for it to award injunctive relief, an element of which is irreparable harm to the plaintiff).  The defendant also complains that the injunction enjoins activity outside the scope of the plaintiff's ACPA claim.  However, as the district court again correctly observed, a plaintiff is entitled to an injunction that is somewhat broader than the scope of its ACPA claim in order to protect the reputation and goodwill it has established in its marks and to prevent defendants from infringing on, or otherwise harming, those marks.  In this case, defendant Maydak continued to assert throughout the proceedings that he was entitled to use the "foradodge.com" domain name; he sought to register "foradodge" with the United States Trademark Office; and he registered to himself the "foradodge.us" domain name after this action was filed.  Under these circumstances, the scope of the injunction issued by the district court was entirely appropriate.

**III.**     Finally, we consider the defendants argument that the district court improperly struck their third party complaint against the Untied States in which they alleged that the ACPA provides for an unlawful taking without just compensation in the event they lost the "foradodge.com" domain name.  The district court properly struck the third party complaint against the United States as the complaint is without merit and fails as a matter of law.  "A regulatory taking occurs when the Government prevents a [property] owner from making a particular use of the property that *otherwise would be permissible*." *McKay v. United States*, 199 F.3d 1376, 1382 (Fed. Cir. 1999) (emphasis added).  As the district court noted, the defendants' use of a domain name that infringes the plaintiff's trademark is not otherwise permissible.  Thus, the ACPA does not effect a taking.  *See Sporty's Farm,* 202 F.3d at 502 (holding that an injunction requiring the defendant to relinquish a domain name it registered because the defendant's registration of the domain name violated the ACPA was not impermissibly retroactive since the injunction provided only prospective relief);  *See also E. & J. Gallo Winery v. Spider Webs Ltd.,* 129 F. Supp. 2d 1033, 1047 (S.D. Tex. 2001) (finding no basis to hold that the ACPA provides for an unlawful taking and deprivation of property); *Shields v. Zuccarini*, 89 F. Supp. 2d 634, 642 (E.D. Pa. 2000) (holding that the defendant failed to show that the ACPA countenances an unconstitutional "taking" by a nongovernmental actor).

## CONCLUSION

For the reasons stated above, we AFFIRM the district court on all the grounds raised.