THIS OPINION IS A
PRECEDENT OF THE TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451

BUTLER

Mailed: April 4, 2008

Opposition No. 91153172

DAIMLER CHRYSLER CORPORATION

v.

KEITH MAYDAK

Before Quinn, Rogers and Cataldo, Administrative Trademark Judges.

By the Board:

Applicant seeks to register the mark FORADODGE for "consulting services and providing information in the fields of privacy, avoiding legal problems, obtaining government records, correcting government records, and counterintelligence."[1]

As grounds for the opposition, opposer alleges that applicant's mark, when used on the recited services, so resembles opposer's previously used and registered marks DODGE, DODGE RAM and DODGE and design for, inter alia, automobiles and automotive goods and services, as to be likely to cause confusion, mistake or to deceive.[2] Opposer also alleges likelihood of confusion with its previously used 4ADODGE "designation," used in a website

---

[1] Application Serial No. 76274100, filed on June 15, 2002, claiming a date of first use anywhere of December 26, 1996 and a date of first use in commerce of January 1, 1997.
[2] Opposer pleads ownership of Registration Nos. 364669; 569431; 1169189; 1189233; 1409844; and 1762717.

address and with 1-800 telephone numbers in connection with various goods and services offered by opposer.

In his answer, applicant denies the salient allegations of the notice of opposition.

Although opposer informed the Board in its notice of opposition, filed August 15, 2002, that the parties were involved in civil litigation, it was not until September 30, 2003 that proceedings herein were suspended pending final determination of the court case involving the parties. This case now comes up on opposer's fully briefed motion, filed January 17, 2007, for summary judgment in its favor based on the final determination in its favor in the civil action and on opposer's fully briefed motion, filed April 4, 2007, to strike as untimely applicant's response to opposer's summary judgment motion.

**Opposer's motion to strike**

Applicant's response to opposer's motion for summary judgment was due, as last reset, on Tuesday, April 3, 2007. Applicant filed his response using the ESTTA filing system on Sunday, April 8, 2007. Applicant's response is accompanied by a certificate of service dated April 5, 2007.

Opposer moves to strike applicant's response on the bases that it was late, that it is not signed in conformance with the applicable rules, and that opposer did not receive its service copy.

In response, applicant argues that the ESTTA system does not permit a document to be uploaded without an electronic signature,

2

thus suggesting that the signature on the cover page is acceptable.  Applicant argues that he did serve his response on opposer and, because opposer may obtain the response on-line, the "failure of the Postal Service to deliver the document was harmless."  Applicant admits that his response was filed late, explaining that he attempted to file it on April 7, 2007 but received an error message.  Applicant argues that the Board should consider his response because any miscalculation was "a harmless error."

Trademark Rule 2.193(c)(1)(iii) provides as follows:

> Where an electronically transmitted trademark filing is permitted or required, the person who signs the filing must either:
>
> (A) Place a symbol comprised of numbers and/or letters between two forward slash marks in the signature block on the electronic submission; or (B) Sign the verified statement using some other form of electronic signature specified by the Director.

In this case, applicant used a symbol between the forward slash marks, "/s/," followed by his name.  This qualifies as a signature under the Rule.  *See also PPG Industries, Inc. v. Guardian Industries Corp.,* 73 USPQ2d 1926 (TTAB 2005) ("… when a paper is filed via ESTTA, it must be signed in conformance with Rule 2.193(c)(1)(iii).  As a practical matter, ESTTA will allow the filing party to complete the submission process only after the required electronic signature has been entered.").  As to opposer's non-receipt of its service copy, though unfortunate, there is no evidence that applicant actually did not serve a copy

3

on opposer.  Finally, applicant's response is admittedly late.
However, in view of the importance of ensuring that we adequately
consider the ramifications of the disposition of the civil
action, we have chosen to consider both parties' submissions on
that subject.[3]

***Summary of the civil litigation[4]***

In the court case, which commenced on September 28, 1998,
the parties are in the same position as they are in this
opposition:  opposer herein is the plaintiff and applicant herein
is one of the defendants.  Defendants registered the domain name
foradodge.com with Network Solutions, Inc.  Plaintiff brought
claims under the Lanham Act for trademark infringement, trademark
dilution, and unfair competition, under state law for trademark
infringement and unfair competition, and under the
Anticybersquatting Consumer Protection Act ("ACPA").  Plaintiff
relied on its registered DODGE marks, its 4ADODGE mark, and its
internet domain name 4ADODGE.COM, registered with Host Networks.
On May 31, 2002, the court granted plaintiff's motion for summary
judgment in its favor, brought on its ACPA claim only.  In doing
so, the court accepted the magistrate judge's Report and

_____

[3] Regarding our consideration of applicant's late brief, we note that, as
discussed in more detail later in this order, the court's decision is binding
on the Board.  Thus, because both parties were before the court, there is no
prejudice to opposer.  This situation, as with situations presenting claim and
issue preclusion, is distinguishable from other cases in which briefs are
filed late and not considered by the Board because of their tardiness.  *See*
Trademark Rules 2.127(a) and 2.127(e); and TBMP §502.02(b) (2d ed. rev. 2004).
[4] *DaimlerChrysler Corp. v. The Net, Inc., et al, and Keith Maydak,* Case No.
98-CV-74186-DT (E.D. Mich. July 29, 2003); *aff'd DaimlerChrysler v. The Net,
Inc., et al, and Keith Maydak; Michael Sussman,* 388 F.3d 201, 72 USPQ2d 1912
(6th Cir. 2004).

Recommendation ("Rpt. & Rec."), dated April 8, 2002, as the findings and conclusions of the court. However, the court noted that the plaintiff's remaining claims were still pending and therefore did not enter a final judgment in favor of the plaintiff.

After prevailing on the summary judgment motion regarding its ACPA claim, the plaintiff sought a remedy and final judgment by moving for a permanent injunction, for dismissal without prejudice of its remaining claims, and for transfer of the domain name in the court register. On June 19, 2003, the court accepted the magistrate judge's Report and Recommendation on the motion for permanent injunction and final judgment, dated May 23, 2003, as the findings and conclusions of the court.[5] The court then granted the permanent injunction and entered a final judgment in favor of plaintiff. In doing so, the court also granted plaintiff's motions for voluntary dismissal without prejudice of its remaining claims and for transfer of the domain name. The court also dismissed defendants' counterclaim (brought against plaintiff for abuse of process). The order permanently enjoining defendants for violation of the ACPA was entered by the court on July 29, 2003. The permanent injunction is discussed in more detail later in this order.

---

[5] In support of its summary judgment motion in this opposition, opposer introduced the magistrate judge's findings and conclusions, articulated in the Rpts. & Recs., with respect to the summary judgment determination (dated April 8, 2002) and with respect to the imposition of the permanent injunction and remaining matters (dated May 23, 2003).

5

Defendants appealed, among other things, the district court's grant of summary judgment in plaintiff's favor on the grounds that the district court erred when it found that 1) the mark 4ADODGE qualifies as a protected trademark under the ACPA and 2) that defendants had a bad faith intent to profit when they registered the foradodge.com domain name.[6] *DaimlerChrysler,* 72 USPQ2d at 1914. Defendants also appealed as overly broad the scope of the permanent injunction granted by the district court. *Id.* at 1917. The circuit court affirmed the district court on all grounds raised.

***Opposer's motion for summary judgment***

Opposer bases its motion in this case on the doctrine of collateral estoppel. Opposer argues that, in determining the ACPA claim, the district court has ruled both that applicant's use of "foradodge" in his domain name "foradodge.com" is likely to be confused with opposer's DODGE marks and that opposer's DODGE marks are protected, distinctive and famous; and the court further granted broad injunctive relief barring applicant's use of the term "foradodge." In addition to the district court's reports and recommendations and rulings, and the decision of the Sixth Circuit, opposer has introduced with its motion for summary judgment certified copies of its pleaded DODGE registrations showing that such registrations are valid and subsisting and are

---

[6] Both of these are elements necessary to establish an ACPA claim under 15 U.S.C. §1125(d)(1)(A), discussed in more detail in the magistrate judge's Rpt. & Rec. dated April 8, 2002.

owned by opposer.  Consequently, for purposes of this motion for summary judgment, priority is not in issue with respect to such marks.  *See King Candy Co. v. Eunice King's Kitchen, Inc.,* 496 F.2d 1400, 182 USPQ 108, 110 (CCPA 1974).

In response, applicant argues that opposer is not entitled to summary judgment because opposer withdrew its trademark claims and the court only adjudicated rights in the internet domain names.  Applicant argues that the elements considered under the ACPA claim have no correlation to the elements of a trademark action, pointing out that in the court case there was no consideration of the products involved.  Applicant argues that the court never addressed whether the term www.4adodge.com, as used by opposer, constituted a trademark.  Applicant also contends that there is no evidence of how applicant's use of his mark will interfere with opposer's use of its mark for automobile parts.

On a motion for summary judgment, the moving party has the burden of establishing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  A genuine dispute with respect to a material fact exists if sufficient evidence is presented that a reasonable fact finder could decide the question in favor of the non-moving party.  *See Opryland USA Inc. v. Great American Music Show, Inc.,* 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992).  Thus, all doubts as to whether any particular factual issues are genuinely in dispute must be resolved in the light most favorable

7

to the non-moving party. *See Olde Tyme Foods Inc. v. Roundy's Inc.,* 961 F.2d 200, 22 USPQ2d 1542 (Fed. Cir. 1992).

1. Res Judicata and Collateral Estoppel

Under the doctrine of claim preclusion (*res judicata*), the entry of a final judgment "on the merits" of a claim (*i.e.,* cause of action) in a proceeding serves to preclude the relitigation of the same claim in a subsequent proceeding between the parties or their privies, even in those cases where prior judgment was the result of a default or consent. *See Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); and *Chromalloy American Corp. v. Kenneth Gordon, Ltd.*, 736 F.2d 694, 222 USPQ 187 (Fed. Cir. 1984).

Clearly, the claim adjudicated in the court case under the ACPA is not the same claim as the one presented in this opposition proceeding, *i.e.,* priority of use and likelihood of confusion. Moreover, although applicant references *res judicata* in his response, opposer does not base its motion for summary judgment on claim preclusion.

Under the doctrine of collateral estoppel, or issue preclusion, if an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in a subsequent suit involving the same issue and the same parties, or at least the party against whom the same issue was adversely determined. The requirements which must be met for issue preclusion are:

    (1) identity of issues in a prior proceeding;
    (2) the issues were actually litigated;
    (3) the determination of the issues was necessary
    to the resulting judgment; and
    (4) the party defending against preclusion had a
    full and fair opportunity to litigate the issues.

*See Mayer/Berkshire Corp. v. Berkshire Fashions Inc.*, 424 F.3d 1229, 76 USPQ2d 1310 (Fed. Cir. 2005); *Jet Inc. v. Sewage Aeration Systems*, 223 F.3d 1360, 55 USPQ2d 1854 (Fed. Cir. 2000); and *Larami Corp. v. Talk To Me Programs Inc.*, 36 USPQ2d 1840, 1843-1844 (TTAB 1995).

The district court, referencing the plain language of 15 U.S.C. §1125(d)(1), indicated that a plaintiff must prove the following to succeed on an anticybersquatting claim: 1) it has a valid trademark entitled to protection; 2) its mark is distinctive or famous; 3) the defendant's domain name is identical or confusingly similar to, or in the case of a famous mark, dilutive of, the plaintiff's mark; 4) the defendant used, registered, or trafficked in the domain name 5) with bad faith intent to profit.[7]

Reviewing the findings and conclusions made by the district court, there are at least some issues which were litigated and determined that have a bearing on the likelihood of confusion claim in this opposition proceeding. For example, relying in part on the statutory definition of a "trademark," Trademark Act §45, 15 U.S.C. §1127, the court concluded that plaintiff has a protected trademark in its 4ADODGE mark, even though such mark is

---

[7] April 8, 2002 Rpt. & Rec., p. 7.

9

not registered.[8]  In addition, the court found that "… the

'foradodge' domain name and plaintiff's '4ADODGE' are

phonetically identical, and thus confusingly similar."[9]  Other

likelihood of confusion factors were not determined in the court

case (for example, the relatedness of the parties' involved goods

and services).  However, because we believe that the permanent

injunction, as discussed below, prohibits registration by

applicant of his mark, the Board need not conduct a further

analysis of the applicability of collateral estoppel to opposer's

substantive claim of priority and likelihood of confusion.

2.  The Permanent Injunction

The terms of the permanent injunction are set forth below:

THEREFORE, IT IS ORDERED that the Defendants; The Net, Inc.,
Host Networks, Inc., Mutual Assignment and Indemnification
Company, Michael Sussman, and Keith Maydak, their officers,
agents, servants, attorneys, employees, privies, successors
and assigns, and all holding for and through them, and all
persons in active concert or participation with any of them,
are permanently enjoined from:

(a)  using, displaying, advertising, copying, registering,
     imitating, or infringing upon the DODGE, 4ADODGE, 1-
     800-4ADODGE marks or 4adodge.com, 4adodge.net,
     foradodge.com and foradodge.net.

(b)  using or displaying DODGE, 4ADODGE, 1-800-4ADODGE, or
     colorable imitations thereof including but not limited
     to FORADODGE, as a business name, domain name or mark
     in any written, oral, or electronic advertisements,
     displays, signs, sales promotions, directory listings,
     or in any other public communication (including
     answering telephones and internet websites);

(c)  From using DODGE or 4ADODGE or any other word that is
     confusingly similar to DODGE or 4ADODGE as or as part

---

[8] April 8, 2002 Rpt. & Rec., p. 9.  There was no dispute that plaintiff's
registered DODGE marks were entitled to protection. *Id.*
[9] April 8, 2002 Rpt. & Rec., p.16.

of any trademark, service mark, brand name, trade name, or other business or commercial designation, in connection with the sale, offering for sale, distribution, advertising, or promotion of any product or service;

(d) Making representations that Defendants' (*sic)* or Defendants' products or services, are in any way sponsored, approved, authorized, or affiliated with Plaintiff;

(e) Otherwise infringing on Plaintiff's DODGE or 4ADODGE marks.

The permanent injunction prohibits applicant from using (subsections (b) and (c), *supra*) or registering the mark FORADODGE for any products or services, thus including those services recited in his application. Moreover, in affirming that the "scope of the injunction issued by the district court was entirely appropriate," the circuit court was aware that "… defendant Maydak continued to assert throughout the proceedings that he was entitled to use the "foradodge.com" domain name; he sought to register "foradodge" with the United States Trademark Office; and he registered to himself the "foradodge.us" domain name after this action was filed."[10] *DaimlerChrysler*, 72 USPQ2d 1917. Thus, the district court was aware of the existence of applicant's trademark application pending before the USPTO when

---

[10] *See also* Rpt. & Rec., May 23, 2003, p. 9. The district court, in determining that the scope of plaintiff's proposed permanent injunction (which is the permanent injunction the court entered) was not overly broad, stated that "Defendants have repeatedly infringed on plaintiff's "DODGE" and "4ADODGE" marks in their websites, and apparently have no intention of ceasing to do so on their own accord." The court went on to note, "For example, defendant Maydak continues to assert … that he is entitled to use the foradodge.com domain name, and has registered to himself the foradodge.com domain name." *Id.* at fn. 2.

it adopted the permanent injunction prohibiting applicant from using or registering his mark.

As the parties are aware, this opposition proceeding was suspended pending disposition of the court case. The policy reason for this is that, to the extent that a civil action in a Federal district court involves issues in common with those in a proceeding before the Board, the decision of the Federal district court is typically binding upon the Board, while the decision of the Board is not binding upon the court. *See* TBMP §510.02(a) (2d ed. rev. 2004). Moreover, any final determination made by the Board is appealable to Federal district court, including to the district in which the civil action between the parties took place. *See* Trademark Act §21(b); Trademark Rule 2.145(c); and TBMP §901 (2d ed. rev. 2004). Thus, in this case, it is incumbent upon the Board to give deference to the determinations of the court, including the remedy entered therein, and consider the terms of the permanent injunction. As a result, we find that applicant is precluded from registering his mark. A requisite condition for registration of a mark which is the subject of an application based on use or on an application based intent-to-use, which may only be registered after use commences, is use of the mark. Thus, because the injunction permanently prohibits applicant from using the applied-for mark, it is a legal impossibility for applicant to obtain a registration.

In view thereof, opposer is entitled to summary judgment in its favor as a matter of law because the terms of the permanent

12

injunction prohibit applicant from using or registering his FORADODGE mark for any goods or services.  Accordingly, judgment is hereby entered against applicant, registration to applicant is refused, and the opposition is sustained.

✩✩✩